UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DAVID MARTINEZ,

               Petitioner,        **MEMORANDUM & ORDER**

    - against -                                No. 06-CV-5401 (ERK)

DALE A. ARTUS,

               Respondent.
------------------------------------------------------------------X

KORMAN, J.:

      David Martinez was convicted, after a jury trial, of three counts of burglary in the second degree (New York Penal Law (hereinafter "Penal Law") § 140.25(2)), one count of criminal possession of a weapon in the third degree (Penal Law § 265.02(1)), two counts of criminal possession of stolen property in the fourth degree (Penal Law § 165.45(2)), and six counts of criminal possession of stolen property in the fifth degree (Penal Law § 165.40). Petitioner was sentenced to fourteen years in prison. The conviction was affirmed by the Appellate Division. People v. Martinez, 794 N.Y.S.2d 397 (2d Dep't. 2005), lv. to appeal denied, 4 N.Y.3d 888 (2005). This petition for a writ of habeas corpus, which was reassigned to me on March 10, 2010, followed.

## BACKGROUND

      In early 2000, the New York City Police Department ("NYPD") was investigating a string of neighborhood burglaries in Queens, New York. On January 25, 2000, Police Officer Daniel Schindlar was patrolling the Briarwood section of Queens, when he received a call to respond to a robbery at 84-10 Main Street, the home of Eduardo Quiroa and Herberth Arce. (H: 8-9; T: 1093-94.) When Mr. Arce returned from work, he found that his living room window

1

lock had been broken. His apartment was in shambles as dresser drawers were opened, his belongings were strewn on the floor, and he was missing several pieces of jewelry. (T: 1096-97.) When Officer Schindlar arrived at the scene, he made the same general observations. (H: 9; T: 487.) He then looked outside the window and found footprints in the snow. Officer Schindlar followed the footprints to another apartment building where he subsequently found another window which was also pushed in. (H: 9-11; T: 488-91.) This apartment was occupied by Dora Chaimov. (T: 491.) At trial, Ms. Chaimov testified that several pieces of jewelry were stolen and subsequently recovered by the NYPD. (T: 928-30.) When Officer Schindlar looked inside the window, he saw a man in dark clothes running toward the doorway leading out of the apartment. (H: 11; T: 493-94.)

At the same time and in the nearby vicinity, Detective Michael Gilmartin was on patrol. He heard Officer Schindlar's broadcasted description of the suspect and witnessed petitioner walking near the corner of 141st and Main Streets. (H:12; T:958-59.) Detective Gilmartin noticed that Officer Schindlar's description of the man he observed fleeing the apartment matched petitioner's characteristics. Petitioner and the described suspect wore the same colored clothes and were of similar height and physical stature. (H: 13; T: 958.) When Detective Gilmartin began to approach petitioner by car, petitioner immediately turned and walked in the opposite direction (H: 117-119; T: 959-60.) Detective Gilmartin then proceeded to ask petitioner where he was coming from, but he remained silent. (T: 966.) Gilmartin then got out of the car and noticed a screwdriver stuck in the snow by petitioner's feet. When asked, petitioner admitted that the screwdriver was his. (H: 119-120, 128-130; T: 966-67.) Detective Gilmartin then asked petitioner if he had any identification, to which petitioner responded by handing over a wallet. (H: 15; T: 967.) The wallet contained several credit cards in the names of different

people and an alien identification card with the name "David Martinez." (H: 15-16, 29, 120, 128; T: 506.)

Subsequently, Officer Schindlar joined Detective Gilmartin at the corner of 141st and Main Streets after he heard a radio broadcast that Gilmartin had stopped petitioner. Officer Schindlar asked petitioner where he was coming from. Visibly nervous, petitioner said he was coming from 168th Street, but motioned in the wrong direction. (H: 15.) Schindlar then frisked petitioner and found a flashlight, rubber glove, approximately 80 pieces of jewelry, cash, a .45 caliber bullet, a hotel key, a beeper, and a cell phone. (H: 16-17, 19-20, 31-32, 89; T: 506-08.) Petitioner was placed in a police car and driven to the 107th precinct.

At the precinct, petitioner was informed that he was under arrest for burglary of the apartment buildings. For purposes of vouchering the recovered property, Schindlar tried to ascertain what property belonged to petitioner. Petitioner stated that the cell phone, beeper, and wallet were his. (H: 20.) Subsequently, Detective Edward Wong read petitioner his Miranda rights. (H: 134; T: 679, 687-90.) It is NYPD practice to use a pre-printed Miranda form, so that the officer marks "yes" or "no" after each particular warning is read to the defendant. The defendant then signs and dates the end of the form indicating that he has understood his rights. Detective Wong testified that this was the procedure used when he read petitioner his rights. (T: 680-81.) Although the prosecution could not produce the exact sheet petitioner signed at trial, Detective Wong testified that petitioner had signed such a form. (H: 139, 146-148, 171-174; T: 690.)

Detective Wong then began to question petitioner. The questions focused on the circumstances of the burglaries that lead to his arrest as well as a second cell phone that was

3

found in the burglarized apartment of another victim named Yvette Bermudez. (H: 139; T: 690-91.) Like Mr. Arce and Ms. Chaimov, Ms. Bermudez also found that her apartment was ransacked. She told the NYPD that her jewelry and a watch were stolen. (T: 945-46.) She also gave Detective Wong a cell phone that she found in her apartment. (T: 947-48.) When asked if that cell phone also belonged to him, petitioner admitted that it was, although he said that he loaned the phone to a friend named Ismael Lopes. (H: 139-140; T: 691.) Petitioner also denied taking part in any of the burglaries that recently occurred in Briarwood.

Detective Wong also investigated the hotel key recovered during the frisk. He ascertained that it came from the Jets Motel on Queens Boulevard. Petitioner was renting room 219 under his own name on a daily basis. (H: 140-141; T: 692.) The hotel clerk informed Detective Wong that the rental agreement was set to expire the following morning. (H: 141-142; T: 692.) Wong placed an officer outside the room (H: 171; T: 691-92) and returned the next morning to find a gun, pieces of jewelry, and a cell phone box (H: 142-144; T: 694-96). All of these items were seized by the NYPD.

The trial judge denied petitioner's motion to suppress the above mentioned physical evidence. In addition, all of petitioner's statements were held admissible except for his answer and gesture in response to Officer Schindlar's question as to which direction he was coming from and his response at the precinct as to his ownership of the cell phone, wallet, and beeper. The judge found that both statements were made while petitioner was being interrogated in custody, and therefore, required the administration of Miranda warnings.

At trial, Arce, Bermudez, and Chiamov all testified that they their homes were ransacked and that cash, jewelry, and other valuable items were taken. Other victims who lived in the

4

neighborhood also testified about finding their homes burglarized. However, petitioner's three burglary convictions were based on the burglaries of Arce, Bermudez, and Chiamov's homes. The victims also testified that they were able to identify their missing jewelry, credit cards, clothes, and other stolen items that were seized from petitioner at the police precinct. (T: 866-68, 929-35, 1014-17, 1030-31, 1055-61, 1084-86, 1098-102).

## DISCUSSION

Petitioner seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254 alleging that (1) the trial court failed to suppress property that the police recovered without probable cause to search him; (2) the trial court failed to suppress statements made by him to the police after he was questioned without being advised of his Miranda rights; (3) the prosecution failed to give proper notice of the grand jury proceeding thereby depriving him of his right to appear as a witness on his own behalf; and (4) the evidence was insufficient to satisfy the conviction for the crime of burglary. (Pet'r's Pro Se Petition at 6-10.)

**I. Fourth Amendment Claim**

In Stone v. Powell, 428 U.S. 465 (1976), the Supreme Court made it clear that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 482. On the other hand

> [i]f the state provides no corrective procedures at all to redress Fourth Amendment violations, federal habeas corpus remains available. It may further be that even where the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process, the federal intrusion may still be warranted. Singh v. Miller, 104 Fed.

Appx. 770, 772 (2d Cir. 2004) (quoting Gates v. Henderson, 568 F.2d 830, 840 (2d cir. 1977)); see also Capellan v. Riley, 975 F.2d 67, 71 (2d Cir. 1992).

Petitioner does not claim that New York failed to provide the requisite corrective procedures. Nor could this claim succeed, because New York provides criminal defendants with the opportunity to litigate Fourth Amendment claims before trial. See NY Crim. Pro. Law § 710; see also Capellan, 975 F.2d at 70 n.1. Moreover, petitioner utilized the relevant state procedure during which he was afforded a pretrial hearing on his motion to suppress physical evidence and his post-arrest statements.

Because the State did not fail to provide "corrective procedures," petitioner must show an "unconscionable breakdown" in the review process. An "unconscionable breakdown" is proven when a petitioner demonstrates that "no state court…conducted a 'reasoned method of inquiry into the relevant questions of fact and law,' or any inquiry at all" into petitioner's Fourth Amendment claims. Shaw v. Scully, 654 F.Supp. 859, 864 (S.D.N.Y. 1987)(quoting Cruz v. Alexander, 477 F.Supp. 519 (S.D.N.Y. 1979)). Here, there was no "unconscionable breakdown" in the process provided in the State criminal procedure law. The judge issued a written opinion which suppressed some of petitioner's statements but denied suppression of the seized physical evidence. (State's Br., Exhibit J.) This leaves no doubt that the hearing court conducted a "reasoned inquiry" into the pertinent issued raised by petitioner. Shaw, 654 F.Supp. at 864.

**II. Miranda Claim**

Petitioner's second argument is that his Miranda rights were violated when the police interrogated him in custody before advising him of such rights. In his brief to the Appellate Division, petitioner argued that the State failed to "turn over a purported Miranda card alleged to have been signed by [petitioner], and questions asked by their witness." (Appellant's Br. at 13.)

Specifically, this argument was grounded in purported violations of Brady v. Maryland, 373 U.S. 83, 87 (1963)(withholding exculpatory evidence violates due process "where the evidence is material either to guilt or to punishment") and People v. Rosario, 9 N.Y.2d 286, 289 (1990)(holding that a prosecutor must disclose to the defense "a witness' prior statement, whether or not it varies from his testimony on the stand"). In his habeas petition, petitioner seeks to have post-arrest statements suppressed because he did not receive the requisite Miranda warnings. Petitioner's claim is not exhausted, and very likely procedurally forfeited. Grey v. Hoke, 933 F.2d 117 (2d Cir. 1991).

Even though this claim is unexhausted, the Supreme Court has held that a "stay and abeyance" procedure for "mixed petitions" is permissible. Rhines v. Weber, 544 U.S. 269, 275 (2005). A mixed petition is a habeas petition which contains both exhausted and unexhausted claims. This procedure permits the district court, for example, to allow a petitioner to return to federal court after he has exhausted his unexhausted claims in state court. See e.g., Zarvela v. Artuz, 254 F.3d 374, 382 (2d Cir. 2001). In Rhines, the Supreme Court narrowed the application of this procedure by holding that it is only available when unexhausted claims are not plainly meritless and the petitioner has "good cause" for the failure to exhaust his claims first in state court. Rhines, 544 U.S. at 277.

The Supreme Court did not define "good cause." Nevertheless, subsequent case law has shed some light on its meaning. In Pace v. DiGuglielmo, 544 U.S. 408, 416 (2005), the Supreme Court held that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." Moreover, the lower federal courts have primarily applied the term in the context of ineffective assistance of counsel claims where it is reasonable to conclude that an appellate attorney will not claim his

7

own ineffective assistance on appeal. See e.g., Wallace v. Artus, 2006 U.S. Dist. LEXIS 12396, at *11 (S.D.N.Y. Mar. 23, 2006) ("Most district courts have ruled that ineffective assistance of counsel suffices to show good cause . . . ."); Ramchair v. Conway, 2005 U.S. Dist. LEXIS 25852, at *18 (E.D.N.Y. Oct. 26, 2005). In contrast to the above examples, petitioner has failed to demonstrate any valid reason for his failure to raise this claim in the New York courts.

Petitioner's claim also fails on the merits. It is well settled that Miranda warnings must be administered to a suspect before he is interrogated while in police custody. Miranda v. Arizona, 384 U.S. 436, 444 (1966); see also Pennsylvania v. Muniz, 496 U.S. 582, 601 (1990); Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). The trial court suppressed several statements made by petitioner. The statements admitted for trial were (1) petitioner's initial responses to Detective Gilmartin's inquiry when he was initially approached on a public street about the ownership of the screwdriver and his identity, and (2) petitioner's statement to Detective Wong at the precinct regarding the Briarwood burglaries and his ownership of the recovered cell phone.

The trial court properly ruled that petitioner's statements made to Detective Gilmartin were not the subject of custodial interrogation. Rather, they were statements made in response to permissible investigatory questions while petitioner was not in custody. In Berkemer v. McCarty, 468 U.S. 420, 442 (1984), the Supreme Court emphasized that "the only relevant inquiry in determining when a person is in 'custody' for purposes of Miranda is how a reasonable man in the suspect's position would have understood his situation." The Court has also stated that an individual is in custody when "there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam) (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)). A

determination as to whether an individual is in custody requires "a court [to] examine all of the circumstances surrounding the interrogation." Stansbury v. California, 511 U.S. 318, 324 (1994).

Petitioner was questioned on a public street and he was not arrested. Only Detective Gilmartin was present when these questions were asked, and the detective did not brandish a weapon or make any other gestures or comments that curtailed petitioner's freedom of action to the level of a formal arrest. See e.g., New York v. Quarles, 467 U.S. 649, 655 (1984) (holding that a person surrounded by four police officers and handcuffed "was in police custody because…the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest" (internal quotation marks omitted)); see also Berkemer v. McCarty, 468 U.S. 420, 439-440 (1984) (analogizing the circumstances of a short duration, public scene, and few officers present to a typical Terry stop, where Miranda warnings are not required unless additional circumstances are present which amount to "custody."). Given the circumstances of this case, a reasonable person in petitioner's position would not believe that "[t]reatment of this sort [can] fairly be characterized as the functional equivalent of formal arrest." Berkemer, 468 U.S. at 442.

The trial court was also correct in ruling that petitioner's statements made to Detective Wong were admissible. These statements were made voluntarily after petitioner was read his Miranda warnings and there is no evidence in the record to suggest that he was coerced to make them. Indeed, petitioner did not testify at the suppression hearing.

**III. Grand Jury Claim**

Petitioner claims that the prosecution did not notify him of the grand jury proceeding, which deprived him of his right to appear as a witness on his own behalf. This argument is without merit because petitioner has not raised a cognizable claim.

9

It is well settled that a "presumption of regularity" applies to grand jury proceedings. See Hamling v. United States, 418 U.S. 87, 139 n.23 (1974); United States v. Leung, 40 F.3d 577, 581 (2d Cir., 1994). Even if there is an error during grand jury proceedings, it can be rendered harmless by the defendant's subsequent conviction at trial. United States v. Mechanik, 475 U.S. 66, 70-72 (1986). New York follows the same general approach employed by the federal courts. See e.g. People v. Wiggins, 89 N.Y.2d 872, 874 (1996). Relying on Mechanik, the Second Circuit has that held that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a *fortiori* foreclosed in a collateral attack brought in a federal court." Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989); see also Davis v. Mantello, 42 Fed. Appx. 488, 490 (2d Cir. 2002); United States v. Helmsely, 866 F.2d 19, 21 (2d Cir. 1989). The rule articulated in Lopez has been applied consistently to bar habeas review in these circumstances. See e.g., Ivory v. Artus, 2008 U.S. Dist. LEXIS 110602, at *34 (E.D.N.Y. Oct. 14, 2008); Silva v. Miller, 2009 U.S. Dist. LEXIS 109847, at *13 (S.D.N.Y. Nov. 23, 2009); Cummings v. Burge, 581 F.Supp.2d 436, 444 (W.D.N.Y. 2008).

Nor were petitioner's federal constitutional rights implicated due to his failure to testify before the grand jury. In Hurtado v. California, 110 U.S. 516, 538 (1884), the Supreme Court held that the Grand Jury Clause of the Fifth Amendment does not apply to state criminal proceedings. Moreover, although New York Criminal Procedure Law § 190.50(5) guarantees an individual in petitioner's circumstances the "right to be a witness in a grand jury," the federal district courts have uniformly held that such a claim is not cognizable for habeas review. See e.g., Cates v. Senkowski, 2003 U.S. Dist. LEXIS 3882, at *2 (S.D.N.Y. March 17, 2003); Louis v. Fischer, 2007 U.S. Dist. LEXIS 88671, at *67 (E.D.N.Y. June 25, 2007). Rather, "the right to

a grand jury is a matter of New York State law and as such is not reviewable for habeas corpus." Mirrer v. Smyley, 703 F.Supp. 10, 11-12 (S.D.N.Y. 1989); see also Rohit v. Conway, 2007 U.S. Dist. LEXIS 37905, at *12 (E.D.N.Y. May 24, 2007); Franklin v. Phillips, 2005 U.S. Dist. LEXIS 18356, at *26 (E.D.N.Y. Aug. 29, 2005).

**IV. Sufficiency of the Evidence Claim**

In his final claim, petitioner argues that his burglary convictions were not supported by the sufficiency of the evidence. The Appellate Division found that this claim was unpreserved for review, and in the alternative, it was without merit. Martinez, 794 N.Y.S.2d at 398.

In New York, a timely and specific objection is necessary to preserve a claim of legal sufficiency. Indeed, the Court of Appeals has repeatedly held that in order "[t]o preserve…a challenge to the legal sufficiency of a conviction, a defendant must move for a trial order of dismissal, and the argument must be 'specifically directed' at the error being urged." Hawkins, 11 N.Y.3d at 492 (internal citations omitted). Moreover, the Second Circuit also recognizes New York's contemporaneous objection rule as an independent and adequate state procedural rule barring habeas review. See Richardson v. Greene, 497 F.3d 212, 218 (2d Cir. 2007); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); Cherry v. Walsh, 2009 U.S. Dist. LEXIS 75373, at *27-32 (E.D.N.Y. Aug. 25, 2009).

This having been said, the record is clear that petitioner's counsel timely challenged the sufficiency of the evidence. Specifically, at the close of the prosecution's case-in-chief, he argued:

> The [prosecution has] not provided to your Honor sufficient evidence to satisfy all of the elements [of the crime]…I don't believe the [prosecution has] satisfied CPL 290.10, providing you with sufficient evidence that it was, indeed, Mr. Martinez

11

who had entered and remained inside any of these location with intent to commit a crime therein, which is one of the elements of burglary in the second degree.

(T: 1118.)

Even though petitioner's insufficiency claim was properly preserved, his claim is without merit. In order to prevail under a sufficiency of the evidence argument in habeas proceeding, the petitioner "bears a very heavy burden." Einaugler v. Supreme Court, 109 F.3d 836, 840 (2d Cir. 1997). In assessing such cases, the reviewing court must decide whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). In Jackson, the Supreme Court explained that this standard preserves the role and responsibility of the trier of fact to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. The ultimate decision of the factfinder is paramount and "is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." Id. (emphasis in original). The weight and credibility of the evidence are issues for the jury to resolve and the habeas court must "defer to the jury's assessments of both of these issues." Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996).

Petitioner specifically challenges the sufficiency of each the three second degree burglary convictions. Under the Penal Law, an individual commits second degree burglary when "knowingly enters or remains unlawfully in a building with intent to commit a crime therein," and when "[t]he building is a dwelling." Penal Law § 140.25(2). Penal Law § 140.00(3) defines a "dwelling" as a "building which is usually occupied by a person lodging therein at night."

The evidence that petitioner was guilty of burglary was overwhelming. The events that set in motion the ultimate arrest of petitioner began when Officer Schindlar responded to a 911

12

call by Herberth Arce, the victim of one of the burglaries. Officer Schindlar followed footprints in the snow beginning outside Arce's apartment window. These footprints directly led the Officer to Dora Chaimov's apartment, where he saw a man running towards the door to exit. Based on his observations, Officer Schindlar broadcasted the man's description over police radio. Shortly thereafter and in the vicinity of the burglary, Detective Gilmartin spotted petitioner. He fit the broadcasted description. When petitioner was asked for identification, he handed over his wallet which also contained the credit cards of several different individuals. He also possessed approximately eighty pieces of jewelry, as well as a flashlight and a screwdriver. Subsequently, at the police precinct, as they testified at trial, Arce and Chaimov were able to identify the items seized from petitioner. These facts could easily permit the jury to infer that petitioner broke into both apartments. The jury could also infer that petitioner burglarized Yvette Bermudez's apartment because his cell phone was actually found at the scene of the crime and he admitted to the police that he was the owner of the recovered phone. Moreover, because all three apartments were ransacked and property was in fact removed from the premises, the jury could easily conclude that petitioner also possessed the intent to commit larceny.

**CONCLUSION**

Petitioner's petition for a writ habeas corpus is denied.[1]

SO ORDERED.

Brooklyn, New York
April 26, 2010

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge

---

[1] I would like to express my appreciation to Peter Amend, a student intern, for his assistance in drafting this memorandum.